Argued at Pendleton October 28; affirmed
November 26, 1935

AUNE *v.* OREGON TRUNK RAILWAY ET AL.

(51 P. (2d) 663)

*Jay H. Upton,* of Bend (Upton & DeArmond, of Bend, on the brief), for appellant.

*Fletcher Rockwood,* of Portland (Carey, Hart, Spencer & McCulloch, of Portland, and N. G. Wallace, of Bend, on the brief), for respondents.

RAND, J. This is an action to recover the damage resulting from the burning of a warehouse and blacksmith shop in Bend. The defendants demurred to the amended complaint upon the ground that it failed to state a cause of action. The trial court sustained the demurrer and, upon plaintiff's refusal to plead further, dismissed the action from which judgment the plaintiff has appealed.

The complaint alleges that on August 14, 1933, the defendant, Oregon Trunk Railway, switched certain empty box cars on to a spur leading to plaintiff's warehouse and left them alongside of the warehouse without locking the doors thereof and without placing any guard or watchman over them; that the spur had been constructed for the purpose of transporting freight to and from said warehouse and was under the supervision and control of the defendant company; that on the night following the spotting of these cars, the defendant company permitted certain unknown persons designated in the complaint as "transients" or "hobos" to enter the cars and start a fire therein which burned the cars, and communicating with the warehouse and blacksmith shop burned them together with their contents.

It is alleged that the spotting of these cars on the spur alongside of plaintiff's warehouse without locking their doors or placing them in charge of a watchman and in permitting hobos to congregate in them created a nuisance and fire hazard to plaintiff's property and constituted negligence upon the part of the defendant company and H. M. La Bertew, its station agent, who was in charge of the movement of the cars, and caused plaintiff to sustain the injury complained of.

The complaint alleges that the defendant company permitted these hobos to occupy these cars but there was no allegation in the complaint that the defendant company, or any of its employees, knew of their presence in the cars and it is specifically alleged in the complaint that these unknown persons "had no lawful or other right to enter said box cars at said time".

Where, as here, a complaint is challenged by a demurrer, it is to be construed most strongly against the pleader: *Corliss v. Van Duzer,* 132 Or. 265 (285 P. 253); *McIntosh Livestock Co. v. Buffington,* 108 Or. 358 (217 P. 635). The allegation, therefore, that the persons who started the fire that burned defendant's box cars and plaintiff's buildings had no right to enter the box cars directly contradicts the allegation that they had been permitted to occupy them, and hence plaintiff's complaint must be construed as if it had alleged that such persons were not invitees, permittees or licensees of the defendant company at the time they started the fire which destroyed plaintiff's buildings. If, however, a different construction should be placed upon the complaint and it should be held that the allegations were sufficient to charge that the relationship of licensor and licensee existed between the defendant company and these unknown persons while congregated in these empty cars, then the doctrine that applies to a licensor landowner, namely: That the owner of land is not liable for injury caused by the acts of licensees, unless such acts constitute a nuisance which the owner knowingly suffers to remain, would be applicable to the defendant company: *Brooks v. Henrietta Mills, Inc.,* 182 N. C. 719 (110 S. E. 96); *Rockport v. Granite Co.,* 177 Mass. 246 (58 N. E. 1017, 51 L. R. A. 779). And since the mere presence of these hobos in theses cars at the time of the fire would not,

in itself alone, be sufficient to constitute a nuisance, the defendant company would not be responsible for the acts of such persons.

■ In every civil action for damages, before the plaintiff can be entitled to recover, he must allege and show that some wrongful act has been committed by the defendant and that he has sustained some legal damage as a consequence of such act. In 20 R. C. L., on page 10, the rule is stated thus:

"In order to constitute actionable negligence there must exist three essential elements—namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure. Not only must the complaint disclose these essentials, but the evidence must support them, and the absence of proof of any of them is fatal to a recovery. It is not to be supposed that anyone will attempt to deny the truth of these propositions; they are platitudes."

■ No act is an actionably negligent act (1) till it inflicts injury on some other person; (2) which injury is a natural and probable result to be foreseen by a reasonable person at the time of acting. See Footnote 9 in 1 Beven on Negligence, (2d Ed.), p. 91. Hence, in this case, it being a tort action based on negligence or want of due care, in order to state a good cause of action, the plaintiff must allege in his complaint (1) that the defendants owed some duty or obligation to him which they failed to discharge or fulfill, and (2) that the burning of the buildings was the natural and probable consequence of defendants' failure to perform such duty or obligation.

■ There is no allegation in the complaint of any fact or set of facts which made it wrongful or a violation of plaintiff's rights for the defendants to spot empty freight cars on the spur and leave them overnight

alongside of plaintiff's warehouse. The spur was owned and operated by the defendant company. In the nature of things, empty cars, when not in use, cannot be safely left on the main line but must be switched on to some spur or sidetrack. This conforms to railroad practice everywhere, and there was no allegation in the complaint that it is the usual or customary usage of railroads to lock the doors of empty freight cars, or to place them in charge of a watchman when not in use and standing on some spur or switch. For this reason, none of the acts alleged in the complaint were negligent or wrongful. The demurrer, therefore, was properly sustained.

■ ■ Moreover, if the acts of the defendants were negligent as contended for, they were too remote and not the proximate cause of the injury.

"* * * Negligence is the proximate cause of an injury only when the injury is the natural and probable result of it, and, in the light of attending circumstances, it ought to have been foreseen by a person of ordinary care. Those elements may exist and the producing cause be followed by lapse of time and several intervening events, so long as they are all set in motion by the first cause, and all form a continuous chain down to the injury."

The above is quoted by Watson on Damages, section 32, from *Deisenrieter v. Kraus-Merkel Malting Co.*, 97 Wis. 279 (72 N. W. 735).

■ Under the circumstances as stated, the burning of plaintiff's buildings by hobos who had congregated in these empty unlocked box cars was not a natural and probable consequence of leaving them on the spur nor was it a result which, in the light of attending circumstances, should or could have been foreseen by a person of ordinary care, or which the defendants might have reasonably anticipated or expected to happen. For

that reason, even if the acts charged had been negligent, the defendants would not have been liable for then the case would have come within the rule stated in the Restatement of the Law of Torts by the American Law Institute, section 448, as follows:

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct should have realized the likelihood that such a situation might be created thereby and that a third person might avail himself of the opportunity to commit such a tort or crime."

"Comment: a. The rule stated in this section applies when the actor's conduct creates a situation which is utilized by a third person to intentionally inflict harm upon another or provides a temptation thereto to which the third person yields, the actor having no reason to expect that the third person would so act. Under the rule stated in this section, the actor is not responsible for the harm thus inflicted merely because the situation which his negligence has created has afforded an opportunity or temptation for its infliction."

It is obvious, therefore, that the act of leaving the doors of these empty box cars unlocked was not the proximate cause of the fire which destroyed plaintiff's buildings.

Watson on Damages, section 35, says:

"The rule of law excluding a recovery for remote consequences has been attributed by some to the difficulty of unraveling a combination of causes, and of tracing each result, as a matter of fact, to its true, real, and efficient cause. It has also been said that the law considers only proximate causes, for the reason that remote or speculative considerations would not afford a sufficient degree of certainty for judicial action. But

in addition to this, considerations of fairness and justice require that no one should be held liable for the consequences of an act innocent in itself, and conceived without mischievous intent, which, by the concurrence of some event that could not by any possibility have been foreseen, has produced hurtful consequences to another.''

 The same author says that the injury must have been the proximate and natural consequence of such act, and that in this connection the term ''proximate'' excludes the notion of the intervention of any other culpable and efficient agency between the defendant's dereliction and the loss. Section 33 of the same work is as follows:

''A natural consequence is one which has followed from the original act complained of, in the usual, ordinary, and experienced course of events—a result, therefore, which might reasonably have been anticipated or expected. Natural consequences, however, do not necessarily include all such as, upon a calculation of chances, would be found possible of occurrence, or such as extreme prudence might anticipate, but only those which ensue from the original act, without any such extraordinary coincidence or conjunction of circumstances as that the usual course of nature should seem to have been departed from.''

Section 135 of the same work states:

''Where an intervening act of negligence is so unusual and extraordinary as to interrupt the natural sequence of events, is of a nature the occurrence of which could not have been anticipated by the defendant and without which the plaintiff's injuries would not have been sustained, then the defendant will not be liable.''

In the leading English case of *Sharp v. Powell*, L. R. 7 C. P. 253, the court said:

''No doubt one who commits a wrongful act is responsible for the ordinary consequences which are

likely to result therefrom; but, generally speaking, he is not liable for damage which is not the natural or ordinary consequence of such an act, unless it be shown that he knows, or has reasonable means of knowing that consequences not usually resulting from the act are, by reason of some existing cause, likely to intervene so as to occasion damage to a third person. Where there is no reason to expect it and no knowledge in the person doing the wrongful act that such a state of things exists as to render the damage probable, if injury does result to a third person, it is generally considered that the wrongful act is not the proximate cause of injury so as to render the wrongdoer liable to an action.''

■ That a person is expected to anticipate and guard against all reasonable consequences but that he is not expected to anticipate and guard against that which no reasonable man would expect to occur is well settled.

''In determining what is proximate cause'', it has been said, ''the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrongdoer as likely to flow from his act.''

*Pittsburgh, etc. R. Co. v. Taylor,* 104 Pa. 306, 315 (92 Am. Dec. 768).

Again, it was held in *McDonald v. Snelling,* 14 Allen (Mass.) 295 (92 Am. Dec. 768) : an action can be maintained only where there is shown to be, first, a misfeasance or negligence in some particular as to which there was a duty towards the party injured or the community generally; and, secondly, where it is apparent that the harm to the person or property of another, which has actually ensued, was reasonably likely to ensue from the act or omission complained of. Thus, where defendant's servants engaged in work about a school building failed to fasten a door securely, so that a child of seven years attending school was precipitated into a cellar when he

leaned against the door, it was held that there was no liability in the absence of a showing of knowledge of the possible consequence of leaving the door insecure. In order to render a party liable for the consequence of his wrongful act, it is not necessary that he should have contemplated or been able to foresee the precise form or manner in which the plaintiff's injuries would be received.

"The law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen."

*Christianson v. Chicago, etc., R. Co.* 67 Minn. 94 (69 N. W. 640, 641) and to the same effect see *Sloane v. Railroad Co.,* 111 Cal. 668, 684 (44 P. 320, 32 L. R. A. 193) and *Baltimore, etc., Ry. Co. v. Kemp,* 61 Md. 74.

Again, reverting to the Restatement, section 449 declares:

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby."

As pointed out by Beven, op. cit., in his footnote 2, p. 89, the defendant's view of the possibilities of his act is very material to determine whether his act is negligent or not. It is utterly immaterial to limit liability when once negligence has been established. In the same note, he says: "* * * liability is to be considered, not from the probable anticipation of particular consequences, but from the probability of an injurious consequence resulting."

 It is not essential for a plaintiff to show that an act, claimed to have been the proximate cause of a certain result, was the only cause. It is sufficient if it be established that the defendant's act produced or set in motion other agencies, which in turn produced or contributed to the final result: Watson on Damages, section 65. This rule, however, is of no avail to plaintiff for the reason that the complaint alleges a new, independent, intervening cause which was not produced by the acts or omissions complained of, but was wholly independent of them and adequate in itself to bring about the injurious result. This case, therefore, comes within the general rule that where, between the defendant's act and the injury, there has intervened an independent illegal act of a third person, without which the injury would not have happened, the latter will be held to be the proximate cause of the loss and the defendant will be excused: Watson on Damages, section 72.

The judgment, therefore, is affirmed.

BELT, BAILEY and ROSSMAN, JJ., not sitting.