Argued July 15, affirmed October 7, 1959

KRIEGER *v.* ORESTE

344 P. 2d 541

*Berkeley Lent*, Portland, argued the cause for appellant. On the brief were Peterson, Pozzi & Lent and Philip A. Levin, all of Portland.

*Garner H. Talboy*, Portland, argued the cause for respondent. With him on the brief was Leo Levenson, Portland.

Before McALLISTER, Chief Justice, and LUSK, WARNER and MILLARD, Justices.

McALLISTER, C. J.

This is an action to recover damages for personal injuries sustained by the plaintiff, Charles Krieger, when his bicycle collided with the opened door of a taxicab operated by the defendant, Jay O. Oreste. The jury returned a verdict in favor of plaintiff for $7,500 and judgment was entered thereon. Thereafter defendant moved for judgment in his favor notwithstanding the verdict. The motion was allowed, the judgment for plaintiff was set aside and judgment was entered for defendant notwithstanding the verdict. The plaintiff appeals assigning as error only the granting of defendant's motion for judgment n.o.v.

The accident occurred on 5th street in Portland between Stark and Washington streets. Fifth street is a one-way street for southbound traffic and contains five lanes for traffic of which the lane next to the curb on each side is used for parking.

The accident happened at about 10:30 o'clock on Saturday morning, April 23, 1955. Traffic at that time was heavy. Plaintiff was 18 years old and had been employed as a delivery boy for about a year and a half. He made his deliveries on a bicycle.

Defendant was driving his cab south in the second lane from the west curb, or the lane next to the parked vehicles. After passing through the intersection of 5th and Stark streets, defendant brought his cab to a stop because of a line of traffic stopped ahead of him. The cab was then about five feet south of the intersection. Immediately to the right of the cab there was a loading zone extending south from the inter-

section a distance of about 45 feet. The loading zone was in front of the First National Bank Building. No vehicles were parked in the loading zone but vehicles were parked south thereof.

The only passenger in the cab, a Mr. Love, was riding in the front seat with defendant. Defendant was taking Love to the Mead building, the entrance to which was on the west side of 5th street at about the middle of the block between Stark and Washington streets.

Plaintiff was riding his bicycle south on 5th street and was about 15 feet behind the cab when it stopped. The lane to the plaintiff's left, which was the center lane, was filled with traffic and plaintiff did not have sufficient room to pass the cab on its left side. When plaintiff saw that he could not pass the cab on its left side, he turned to the right into the loading zone intending to pass to the right of the cab. As plaintiff rode through the loading zone, the right front door of the cab opened in front of him. Plaintiff or his bicycle hit the door causing plaintiff to fall and suffer the injury complained of.

The door of the taxicab was opened by the passenger. The only evidence concerning the opening of the door was given by defendant and his passenger. On that point defendant testified as follows:

"A Well, I don't remember—I came up Fifth street. Whether I stopped at the signal previous, I don't recall, but I do know that I had been sitting in the right-hand lane for at least three or four signal turns on the Washington Street end of the block. The right-hand lane of traffic had not moved for that approximate amount of time. We just sat there.

"Q In other words, all these cars were piled up ahead at Washington?

"A Yes. They make that right-hand turn, and on Saturday mornings at ten-thirty in the morning is usually heavy traffic, between ten-thirty and one on Saturdays downtown. The bulk of the traffic comes about that time of day.

"* * * * *

"Q Well then, you might just go ahead and describe to the jury what you know of this accident from that point, while you were sitting there waiting for traffic.

"A We were sitting and talking; I don't know what about—I occasionally do with a passenger—and then after sitting there some time, he became impatient and opened the door and stepped out and handed me a dollar bill, and he didn't wait for the change. And about that same time the door was struck. The extreme right end of the door was struck by the bicycle. I didn't see where he came from, whether he came down Stark Street or whether he came up straight across Fifth Street, across the intersection. It just all happened that fast to me.

"Q Now you say the passenger became impatient. Did you know he was becoming impatient?

"A No. I know he was from out of town, and he seemed to be in a hurry to get to this office in the Mead building is all. And when the traffic didn't move and it was just a few feet from where he was going, he just opened the door without any warning to me at all. He just opened the door and stepped out of the cab.

"Q Did you have any idea he was going to open the door?

"A No, sir.

"* * * * *

"Q Now Mr. Oreste, just where was your pas-

senger, Mr. Love, at the time the bicycle struck the door?

"A  He was standing, just had got out of the cab. If he'd of took a step forward, he'd of got hit by the bicycle.

"Q  It was my understanding that he had already paid you at the time the door was struck?

"A  I say he paid me, yes. He handed me the dollar as he was stepping out of the door, and he got out of the door and told me to keep the ten cents or twenty cents change that he had coming.

"Q  It's your testimony, then, that he gave you the money before he got out of the cab?

"A  I believe he did.

"Q  I think that is rather important. You are quite clear about he got the money out and he gave you the money before he got out of the taxicab, is that correct?

"A  Yes.

"Q  Now after he had given you the money, at that time did you say anything to him about not opening the door at that time?

"A  No. He handed me the money with one hand and opened the door with the other, just that fast.

"Q  Let me put it this way. Between the time that you became aware that he was going to get out of the cab and the time the door was struck by the bicycle, did you at any time during that interval tell him not to get out?

"A  I didn't have any time to say anything to him."

The testimony of the passenger was taken by deposition and concerning the opening of the door, he testified as follows:

"Q  In which traffic lane was the cab traveling,

and what was the condition of the traffic at the time?

"A   We were all the way over in the right-hand lane. The traffic was all stopped and had been stopped there for two or three minutes.

"Q   When and in what manner did you leave the cab?

"A   I left the cab on the corner. I opened the door myself and got out.

"Q   Had you reached your destination?

"A   Yes.

"Q   Who opened the door?

"A   I did.

"Q   Describe what happened when the door was opened.

"A   I stepped down on the street and reached into my pocket to get the money for the cab driver, and when I turned to hand him the money, this boy ran into the door of the cab."

"* * * * *

"Q   Do you know or can you state any matter or thing that may tend to the benefit or advantage of either of the parties to this action? If so, state the same fully and at large in your answer hereto as if specially interrogated.

"* * * * *

"A   We were stopped and had been stopped there for two or three minutes, and I had opened the door and stepped out of the cab and reached in my pocket and was handing him my money when the kid ran into the door."

Plaintiff has cited several authorities holding that one is negligent who, without giving any signals or keeping any lookout, opens a car door into a lane where traffic may be traveling. *Hedman v. Morse*, 278 Mass 437, 180 NE 240 (1932); *Seiler v. Phila. R. T. Co.*, 111 Pa Super 69, 169 A 422 (1932); *Martin v. Hooff-*

*stetter*, (Ohio App 1941) 42 NE2d 556; *Tarrant v. Bottling Co.*, 221 NC 390, 20 SE2d 565 (1942). However, in all of these cases it was the driver himself who opened the door and not a passenger. The cases would support the proposition that the passenger, Mr. Love, was negligent in opening the door without keeping a lookout or giving a signal. We have not been cited to any case which holds that the negligence of a passenger in a case such as this can be imputed to the driver of the taxicab.

■■ Defendant can be held liable only on account of his own negligence. Here he was not in the act of discharging a passenger; on the contrary, the passenger acted on his own volition. We find no substantial evidence tending to prove that the defendant knew, or should have known, that the passenger intended to open the door in time to prevent him from so doing, or to warn plaintiff that the door was to be opened. As was said in *Aune v. Oregon Trunk Railway*, 151 Or 622, 627, 51 P2d 663:

> "In every civil action for damages, before the plaintiff can be entitled to recover, he must allege and show that some wrongful act was committed by the defendant and that he has sustained some legal damage as a consequence of such act."

We have carefully reviewed the record and agree with the trial judge that there was no substantial evidence to support a verdict for the plaintiff.

Affirmed.