Argued July 13, 1978, reversed March 20, 1979

COMFORT, et ux, *Respondents,*
*v.*
STADELMAN FRUIT, INC., *Appellants.*
(TC 10,864, SC 25373)
592 P2d 213

W. Eugene Hallman, of Mautz, Hallman and Rees, Pendleton, argued the cause and filed briefs for appellants.

Milo Pope, Milton-Freewater, argued the cause and filed the brief for respondent. With him on the brief was Storie & Gallaher, Pendleton.

Before Holman, Presiding Justice, and Howell, Lent and Linde, Justices.

LENT, J.

## LENT, J.

Plaintiffs obtained a $15,500 jury verdict for property damage and lost rent for injury to their trailer court resulting from a fire which originated at defendants' fruit processing plant in Milton-Freewater on June 3, 1975. Both the company Stadelman Fruit, Inc., and the plant manager, Charles Robertson, were charged as defendants. They assert on appeal that their motion for a directed verdict on the question of liability should have been granted by the trial court. We agree and reverse.

Plaintiffs alleged that the defendants were negligent in one or more of the following particulars:

"(1) In piling the 'tote' boxes so close to the common property line of Plaintiffs and Defendant, Stadelman Fruit, Inc., when the Defendants knew, or in the exercise of reasonable care, should have known, of the danger from fire;

"(2) In piling the 'tote' boxes without fire breaks between the piles and without sufficient distance from the fence to permit fire equipment to circle around to fight fire, if such should occur, when the Defendants knew, or in the exercise of reasonable care should have known, of the danger from fire;

"(3) In piling the 'tote' boxes adjacent to the propane tank, which, when subjected to intense heat, ruptured and increased the heat which handicapped firemen in fighting the blaze, when the Defendants knew, or in the exercise of reasonable care should have known, of the danger from fire;

"(4) In permitting inflammable debris, consisting of paper, cardboard, broken pallets, pieces of wood and weeds to accumulate upon the premises, which allowed the fire to spread, when the Defendants knew, or in the exercise of reasonable care should have known, of the danger from fire;

"(5) In failing to have a night watchman on the premises to patrol for fires, if any there be, when the Defendants knew, or in the exercise of reasonable care should have known, of the danger from fire;

"(6) In failing to install and maintain a sprinkler system on the 'tote' boxes, prior to the fire, to reduce

the spread of fire if one should occur, when the Defendants knew, or in the exercise of reasonable care should have known, of the danger from fire;* * *"

Plaintiffs contended that they suffered damages as a direct and natural consequence of said negligence.

At the close of all the evidence defendants made the following motion to the trial judge:

"We would also renew our Motion, except we would make it a Motion for Directed Verdict as to both Defendants on the basis of liability and based on the previous arguments that I have made to The Court."

In moving earlier for a judgment of involuntary nonsuit, defendant argued in part:

"* * * [T]here is a lack of any evidence that we have what the Supreme Court has ruled is necessary, a condition which is either a nuisance or one which is a highly combustible or dangerous situation.

"* * * * *

"In this case this is an industrial zone the evidence shows, the property is being put to a lawful purpose. There is no evidence of any danger of fire in this case. There is no mixture which would be or is combustible by itself. The tote boxes, there is no electricity around them or machinery by them. There is no evidence on that. And we feel very strongly that this is not a case where there is any proof that a reasonable person can find that this was a fire situation or a condition of premises which had a combustible or inflammable mixture which they should have taken care of.

"* * * * *

"The question is whether a reasonably prudent person would have some knowledge of some dangerous condition or nuisance on the premises. And I think the *Hess* [*sic*] case quite clearly sets that forth and clearly does not stand for the proposition that a person must keep his premises so as to avoid a fire if it starts. They must prevent conditions which reasonably could be anticipated as occuring and act as a reasonably prudent person and they are not responsible for a fire that spreads through no fault of their own should a reasonable person not anticipate it."

In reviewing the evidence we consider it, and all reasonable inferences therefrom, in the light most favorable to the plaintiff. *Shepler v. Weyerhaeuser Company*, 279 Or 477, 484, 569 P2d 1040 (1977), cert den 98 S Ct 903 (1978). Defendant Stadelman Fruit, Inc., maintains a fruit processing plant in Milton-Freewater, on property zoned heavy industrial. The main building of the plant was two stories and was a combination of wood, metal and cement. There was an apple processing area on the ground floor and a loading dock at the ground floor level on the east side of the building.

To the east of the main building, and separated by a 25-foot paved strip kept clear of materials, was a large stack of "tote boxes," each box 47 inches by 47 inches by 28 inches for apples and prunes and 47 inches by 47 inches by 16 inches for cherries. The tote boxes were stacked between 20 and 30 feet high and the pile was approximately 200 feet in length from south to north and 30 to 40 feet in width. The pile was on the property line between the Stadelman plant and the "Little River Mobile Home Court," also on property zoned industrial. In some places the boxes were leaning against a fence between the properties. There had been problems between Stadelman and the plaintiffs with regard to the tote boxes damaging the fence. One week before the fire the owner of the court, Mr. Comfort, discussed the problem with the plant manager, Mr. Robertson. Mr. Comfort testified that he mentioned the fire hazard because of the condition of the area as well as the problem of the fence being shoved over and boxes falling over the fence. There were other stacks of boxes elsewhere on the premises.

As of the day before the fire the stack was described as irregular, with "some rows shorter than others, some cracks in between them, narrow enough to walk into but not all the way through, some clutter of windblown stuff," including "some boards, weeds and paper." Windstorms caused some leaves and paper to blow into the Stadelman area from other parts of town.

[529]

Though the plant had men assigned to clean up the debris, the area was generally untidy at that time of year because of frequent windstorms. Most of the debris collected in an area on the north end of the tote bin and pallet stack. Also at the north end of the stack, approximately 10 feet away from the stack, was a propane tank used for fueling the lift trucks at the plant. There was pavement under the boxes except for six inches next to the property line with the trailer court to the east, and that unpaved area was "full of weeds."

On the day of the fire some maintenance and box construction work was done at the main building. The apple season had concluded in April and the plant had been shut down approximately two months before the fire. At that time no watchman was employed by Stadelman at the plant and there was also no type of sprinkling system in the tote box area.

■ At approximately 8:30 on the evening of June 3, 1975, a passerby noticed smoke coming from the apple processing area on the ground floor of the main building of the Stadelman plant. At that time there was no smoke or fire in the tote bins. The cause of the fire is not at issue in this case. In their complaint plaintiffs alleged that the fire was ignited "in a manner which is to the Plaintiffs unknown." Both sides made it clear to this court in oral argument that the issue of this case was defendants' negligence solely with regard to the "spread" of the fire.[1]

It was not long after the first sighting that the building was engulfed in flames. When Mr. Comfort first discovered the fire, just after 8:30, he ran over to the plant and saw that the fire had blown over to a box at the top of the northwest corner of the stack. From there it spread on down and over the pile. The wind that night was blowing in a northeasterly direction,

---

[1] While generally the phrase "liability for spread of fire" encompasses both the "start" and "spread" of a fire, in this case the "spread of fire" at issue is in the more restrictive sense and does not include the "start" of a fire.

and Mr. Comfort estimated the speed to be 10 to 15 miles per hour. Mr. Comfort also testified that 30 to 45 minutes passed from the time that he discovered the fire until the mobile homes were on fire. The trailers began catching fire from north to south. The supervisor of the Investigations Division of the State Fire Marshal's office was asked whether he believed the mobile homes would have burned had there not been any wind at all, and he responded, "When the major pile of tote boxes became involved, I think the mobile homes would have burned regardless of the wind, although the wind was certainly a factor." Around 40 men and six trucks fought the fire which was finally extinguished after 18 hours.

We believe it would be helpful to review previous decisions of this court which concern the spread of fire.

In the case of *Aune v. Oregon Trunk Railway*, 151 Or 622, 51 P2d 633 (1935), the plaintiff contended that the defendant railway company was negligent in leaving some empty box cars unlocked and without a watchman and in thus allowing "hobos" to enter the cars and start a fire therein which spread to plaintiff's buildings. In asserting this negligence plaintiff contended that leaving the cars unlocked and unguarded and allowing the hobos to enter them created a nuisance and fire hazard to plaintiff's property. The defendants demurred to the complaint for failure to state a cause of action and the trial court sustained the demurrer. This court affirmed for two reasons, the first being that there was no allegation in the complaint contending that any violation of plaintiff's rights or any deviation from standard railroad practice occured as a result of parking the cars without locked doors or guard. The second reason was that even if defendant's acts were negligent, they were too remote and not the proximate cause of the injury. The court determined that the burning of plaintiff's buildings by hobos who had entered the box cars was not a natural and probable consequence of leaving the cars where

[531]

they were and unlocked and was not a result which should or could have been foreseen by a person of ordinary care. Another factor considered by the court was the notion of the intervention of a culpable agency (between the defendant's negligence and the loss) without which the injury would not have happened.

Another significant case in this area is *Arneil v. Schnitzer*, 173 Or 179, 144 P2d 707 (1944). In that case plaintiff obtained a judgment against defendants for negligently maintaining their premises so that a fire started thereon and spread to other properties. Defendants had been dismantling a mill on the premises and at the time of the fire there were several large disorderly piles of debris and a large pile of oil-soaked sawdust. All of the firefighting equipment had been removed and no watchman was assigned to the property. One month before the fire a field inspector of the State Forester had found the property to be a "fire hazard" and advised the defendants to get a watchman and fire protection. The district fire warden also considered it a hazard and offered to help clean it up. Defendants did not follow these suggestions. The jury determined that the site did constitute a public nuisance, and the court supported that finding by noting legislation against such a fire hazard and for fire protection on timber lands. Defendants contended that they should not be held liable because they did not start the fire and the itinerant who did was an intervening cause. The court determined that it was not necessary for the defendants to start the fire in order to be held accountable. It sufficed that they maintained their property as a public nuisance and that the fire "originated in the accumulated tinder." 173 Or at 199.

In the case of *Pac. N W Bell v. Century Home*, 267 Or 46, 514 P2d 874 (1973), plaintiff charged defendant with violating a City of Eugene Fire Code provision concerning "handling readily combustible materials." Such materials were to be removed from buildings at the close of each day and stored in suitable metal

containers. In that case defendant put sawdust containing linseed oil, refuse and wood trimmings into a wooden trash box in its building. The fire started in the box, spread directly to a dock between defendant's building and the building containing plaintiff's property. Two experts testified that the materials in the box were "highly combustible." Defendant argued that it was found to be negligent solely because it violated the fire code and that it was necessary for the trier of fact to also find that the defendant did not conduct himself as a reasonably prudent person. This contention was not considered by the court since it was not raised at trial.

A related case involving the same fire and decided on the same date by this court was *Hesse v. Century Home*, 267 Or 53, 514 P2d 871 (1973). Plaintiffs did not press the charge that defendant negligently caused the fire to start and for the purposes of the case the court classified the fire as of unknown origin. It was of unknown origin, though, only in that the fire may have been started by arson, defendant's employes, or by spontaneous combustion. The *location* of the origin of the fire was apparently admitted to be the trash box. The court then went on to state, 267 Or at 57:

> "We agree with the defendant that absent statute, one is not liable for the spread of a fire of unknown origin started on his property unless as a result of conditions created on his property he should have anticipated that a fire was likely to start. *Aune v. Oregon Trunk Railway*, 151 Or 622, 624, 51 P2d 663 (1935), so held. There, a fire was started in empty box cars by a third party. On the other hand, in *Arneil v. Schnitzer*, 173 Or 179, 144 P2d 707 (1944), we determined that the jury could have found that the defendant knew or should have known that a fire could be anticipated on its premises and, therefore, the defendant had a duty to take precautions against the start and spread of a fire. If the jury found this to be a fact, the defendant could be held liable for the damage caused by the fire."

[533]

With regard to the plaintiff's contention that defendant was negligent in not providing safety features such as a night watchman, proper extinguishers and hoses, and an automatic fire alarm system, the court stated, 267 Or at 59:

"* * * A defendant might be found negligent for failing to have certain safety devices if the probability of a fire starting on the premises is foreseeably substantially greater than on ordinary premises. As we have previously held earlier in this opinion, the jury could have found that the chances of a fire occurring in this trash box were substantially greater."

The six charges of negligence alleged by the plaintiffs in the case at bar consist of essentially two bases of liability, though they both address the condition of the premises. The first basis of liability, that the nature, storage and location of materials on the premises caused the fire to spread to plaintiffs' property, is incorporated in the first four charges of negligence concerning the tote boxes and debris on the premises. The second basis of liability, that defendant was negligent in failing to provide safety features, is presented by the last two charges of negligence concerning the night watchman and sprinkler system.

With regard to the first basis of liability, the first two allegations of negligence in this case concerning the materials, their storage and location are one, that the boxes were piled too close to the property line, and two, that the boxes were piled without fire breaks and without sufficient distance from the fence to allow fire equipment to circle around to fight the fire. Several factors distinguish these two allegations in the case at hand from those cases where the defendants were allowed to be found liable for the condition of their premises. The factors include whether the conditions relate to the "start" or "spread" of a fire,[2] and if they

_____

[2] The basic reason for making a distinction between conditions alleged to be conducive to the start of a fire as opposed to conditions alleged to be

relate to the spread of a fire, whether they are in violation of a statute or fire code provision, whether they are determined to be a public nuisance, and whether they involve highly combustible and negligently stored materials.

While the *Hesse* case also involved a fire of unknown origin, the focus of the opinion was on the connection of the property conditions to the "start" of the fire. As quoted above, the court stated that absent statute, one is not liable for fire of unknown origin unless because of conditions created on his property the person should have anticipated that the fire was likely to start. 267 Or at 57. The *Aune* and *Pac. N W Bell* cases also focused on the "starts" of the fire.

The *Arneil* case seemed to address the relation of the property conditions to both the start and spread of the fire, stating,

> "* * * Clearly, the jury was warranted in finding that the defendants employed no precautions whatever to prevent the combustible material from igniting nor to prevent fire from escaping from their property to that of their neighbors." 173 Or at 190.

---

conducive solely to the spread of a fire is a recognition of a different focus of concern for the two problems. The concern with regard to the start of the fire is with the ease of ignition of the material, as reflected in the description of materials in *Pac. N W Bell v. Century Home*, 267 Or 46, 514 P2d 874 (1973), as "highly combustible" and in *Arneil v. Schnitzer, 1730 Or 79, 144 P2d 707 (1944)*, as "very inflammable," and whether such materials are properly stored. The concern with regard to solely the spread of a fire, where the cause is unknown and not at issue, necessarily shifts from ignition point to combustibility of materials. All that is required for a fire to spread is that the materials involved burn. Mere combustibility of materials is not a proper focus of concern, though, where a fire already exists and the ignition point of most materials is already reached.

These first two allegations in this case do not involve alleged negligent storage of "highly combustible" materials. To allow wood boxes to be considered as "highly combustible" would be to extend that classification of liability to essentially anything *built* of wood. Thus there is no reason to decide whether one may be held liable where negligently stored highly combustible materials are not involved in the start of a fire but only in its spread. Presumably one may be held liable in such a situation, though the issue of causation for spread due to those materials alone may be difficult to prove.

It appears, though, that with regard to the spread of the fire the court did not consider "the nature, storage and location of materials" so much as the lack of safety measures such as a watchman and fire fighting equipment to contain a fire. To the extent the large piles of debris and oil-soaked sawdust were related solely to the spread of the fire, that condition is distinguishable from the case here in that there the condition was determined by the jury to be a "public nuisance," was in violation of statutes prohibiting fire hazards on timberlands, and involved the improper storage of highly combustible materials.

■ The substance of the first two allegations of negligence in this case is more properly regulated by statute or ordinance. In this heavy industrial zone there was no restriction on the size of tote box stacks and there were no set-back requirements with regard to property lines or requirements for fire breaks between the boxes. We do not find that defendant breached its duty of reasonable care in these circumstances.

■ In addition, plaintiffs also have serious difficulties with these two allegations with regard to sufficiency of the evidence on the issue of causation. It is not contended that the pile was too large and improperly constructed, except that it was too close to the property line and there were no fire breaks within the pile. This latter factor is actually a safety feature and relates to the second basis of liability. As a matter of causation, the wind-borne fire igniting the top of the pile would seem to have made any fire breaks ineffective. There was also no evidence that the fire breaks would have made any difference. There is no evidence as to whether the trailer park would have burned that night if the tote boxes had not been present or if they had been a certain distance from the fence. As for the contention that there wasn't enough room next to the fence for fire equipment to enter and fight the fire, the fire chief testified that even had the tote boxes been moved away from the fence so a truck could get in

between, it "would have been too hot and the smoke too great to see where you was [sic] going."

■ The third allegation of negligence asserts that it was negligent to pile the boxes next to the propane tank which ruptured and increased the heat which handicapped the firemen. We find no evidence that the rupturing of the tank handicapped the firemen and in fact the fire chief testified that it did not prohibit fighting the fire and was hardly noticeable since there was already so much heat and flame.

■ The fourth allegation concerns inflammable debris on the premises which allowed the fire to spread. There is no evidence, however, that such debris in fact allowed the fire to spread. As noted above, Mr. Comfort testified that the fire spread from the buildings to the boxes by fire blowing over to and igniting boxes at the *top* of the pile. There is no evidence that whatever debris was present did significantly affect the fire, let alone "allowed the fire to spread."

■ The second basis of liability in this case, that the defendants were negligent in failing to provide the safety features of a night watchman and a sprinkler system, is presented by the last two allegations of negligence. Again, this case is distinguishable from previous decisions of this court which allowed defendants to be held liable for the condition of their premises. As quoted above, in the *Hesse* case the court determined that a defendant "might be found negligent for failing to have certain safety devices if the probability of a fire starting on the premises is foreseeably substantially greater than on ordinary premises." 267 Or at 59. The court decided that the jury could have found that the chance of a fire occurring in the trash box was substantially greater. As applied to this case on the spread of fire, the *Hesse* analysis is relevant with regard to its focus on the nature of the material and its storage as giving rise to a foreseeably substantially greater probability of a fire spreading. Combustibility of the material, such as

here of piled wood boxes, does not suffice. Rather, dangerously inflammable or explosive or hazardous materials or highly combustible materials, as oil-soaked sawdust in *Arneil* and *Hesse,* and their negligent storage are required before liability will be allowed for the spread of fire because of a lack of safety features. The *Arneil* case is also distinguishable from the one at hand because statutes were involved requiring owners of timberland to provide "adequate protection against the starting or spread of fire thereon or therefrom which shall meet with the approval of the State Board of Forestry." 173 Or at 188.

The basis for restricting liability in these circumstances for the spread of fire because of a lack of safety features was explained well in the case of *Centraal Stikstof Verkoopkantoor v. Pensacola Port A.,* 205 F Supp 724 (1962):

"In this case the Court finds that the complaint fails utterly to show a duty owing from defendant to plaintiff to maintain fire extinguishing apparatus, alarms and watchman. Nowhere in the common law has the Court been able to find a duty on a property owner to provide these things merely because it is possible that the adjacent property, being combustible, could catch fire. This is valid in the absence of allegation that the premises contained dangerously inflammable or explosive materials or that the defendant used fire for its own purposes on the premises. Such allegations raise a distinctly different standard. The imposition of such a duty here could lead to results at once harsh and unreasonable.

"* * * * *

"The Court cannot go so far in the creation of specific duty. Virtually all buildings constructed of wood are highly combustible, i.e., they will burn if ignited. It cannot be said as a matter of law that there is such great or foreseeable danger in maintaining premises made of wood so as to make every person liable for fire spreading to adjoining premises unless there be handy in every instance fire fighting equipment, watchmen and/or alarms. If such duty is to

[538]

evolve upon owners of property this should be done by statute. There is none, and the common law affords no basis for recovery."

We agree with that reasoning and find no basis in the evidence upon which to predicate negligence in these respects.

All and each of the specifications of negligence specifically depend upon defendants having actual or constructive knowledge of "the danger from fire." The evidence is insufficient to submit that specific charge to the jury.

Because of our determination of this case on these grounds, there is no need to address defendants' motion for a separate directed verdict on behalf of Mr. Robertson and defendants' appeal for a new trial on the basis of other alleged errors.

Reversed.