857 F.2d 571
 26 Fed. R. Evid. Serv. 985
 Carlissa CHURCHILL, As the Informal Administrator of the
Estate of Patrick Churchill; and Dale Carlough;
Plaintiffs-Appellants,
v.
The F/V FJORD, her engines, tackle, apparel, appliances,
equipment, apparatus and furniture, et al.; William McLinn,
owner and operator of said F/V FJORD; Russell McLinn and
David Panamarioff; Defendants-Appellees.
In the Matter of the Complaint of William McLINN, as owner
of the F/V FJORD, her engines, tackle, boilers and
equipment, for exoneration from, or
limitation of liability.
In the Matter of the Complaint of Gilbert Jack JOHNSON and
Jack Stewart Johnson, as owners of the F/V SUPERSONIC, her
engines, tackle, boilers and equipment, and as owners of one
certain Beck 15 foot fiberglass skiff, her engine, tackle
and equipment, for limitation of liability.
 No. 86-4178.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1987.
Decided Sept. 14, 1988.
 
 Gerald W. Markham, Kodiak, Alaska, for plaintiffs-appellants.
 Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Anchorage, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before HUG,* NORRIS and HALL, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Churchill and Carlough sue for wrongful death and personal injury arising from the navigation of three skiffs, two of which collided. The district court had subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1333(1) and exercised pendent jurisdiction over plaintiffs' state law claim. The court, after a bench trial, entered judgment in the liability phase of the trial in favor of defendants-appellees William McLinn and the F/V Fjord. Appellants appeal to this court, asserting numerous grounds for reversal. We affirm in part, reverse in part, and remand.[1]
 
 
 2
 * A collision of two skiffs occurred outside the entrance to the channel between Near Island and Kodiak Island, Alaska at approximately 1:20 a.m. on June 30, 1979. The channel generally runs in a north-south direction. One craft, operated and occupied only by David Panamarioff (the Panamarioff skiff) was headed in a northerly direction. The other craft, operated by Russell McLinn (the McLinn skiff), was headed in a southerly direction. Russell McLinn was a crew member of the F/V Fjord and the eighteen year old son of the Fjord's owner and master, William McLinn. Several days prior to the collision, William McLinn and the rest of the Fjord's crew flew to Seward on the mainland. Russell stayed behind, and on the night of June 30th he used the skiff to attend a beach party on another island. Five others were riding in the McLinn skiff on its return from the party when the collision occurred. The McLinn skiff struck the Panamarioff skiff, resulting in the death of Patrick Churchill and injury to plaintiff Dale Carlough, both of whom were riding in the McLinn skiff. Russell McLinn was found to be intoxicated with alcohol and probably marijuana at the time of the accident.
 
 
 3
 At the time of the collision, Michael Chichenoff was navigating a similar seine skiff (the Chichenoff skiff) in approximately the same direction and at approximately the same speed as the Panamarioff skiff. Three passengers occupied the Chichenoff skiff: Lori Chichenoff, Walter Haakanson and Dan Woods. The Chichenoff skiff was to the right of the Panamaroff skiff at a distance variously estimated to be from eight yards to as much as 100 yards.
 
 
 4
 Panamarioff had been experiencing engine difficulties and was headed home to the nearby village of Ouzinkie on Spruce Island when the accident occurred. Chichenoff had agreed to accompany his friend Panamarioff through the channel to insure that Panamarioff would not be stranded should his engine malfunction. There was no contact between the Chichenoff skiff and either of the other skiffs. None of the skiffs had night running lights and all were allegedly traveling at high speeds in violation of local ordinances.
 
 
 5
 Chichenoff operated a seine skiff of the salmon fishing vessel F/V Supersonic. The McLinn skiff was used for a similar purpose in conjunction with the F/V Fjord, a purse seiner. The fishing vessels were moored in Kodiak during the temporary closure of the salmon fishery. Plaintiff's suit against the F/V Supersonic and her owners was settled prior to trial.[2]
 
 
 6
 The district court entered an order granting judgment to Churchill and Carlough against Panamarioff and Russell McLinn jointly and severally, with the application of a specified comparative negligence formula and with the damages to be determined in a subsequent trial. The court ordered dismissal of the plaintiffs' claim for punitive damages and dismissal of the claims against William McLinn and the F/V Fjord. The court directed the entry of final judgment under Fed.R.Civ.P. 54(b).
 
 II
 
 7
 A district court's findings of fact are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52(a); LaDuke v. Nelson, 762 F.2d 1318, 1321 (9th Cir.1985). Under the clearly erroneous standard of review an appellate court must accept the lower court's findings of fact unless upon review the appellate court is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541-42, 92 L.Ed. 746 (1948); Dollar Rent A Car of Washington, Inc. v. Travelers Indemnity Co., 774 F.2d 1371, 1374 (9th Cir.1985). Questions of law are reviewed de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 III
 
 8
 Appellants assert that the F/V Fjord is liable in rem for the torts of Russell McLinn in his operation of the Fjord's skiff. To establish the F/V Fjord's in rem liability, appellants must show that the skiff is part of the F/V Fjord's "equipage" and that Russell McLinn was "in lawful possession" of the skiff. See The Barnstable, 181 U.S. 464, 467, 21 S.Ct. 684, 685-86, 45 L.Ed. 954 (1901) ("the law in this country is entirely well settled that the ship itself is to be treated in some sense as a principal, and as personally liable for the negligence of anyone who is lawfully in possession of her, whether as owner or charterer"); Complaint of McLinn, 744 F.2d 677, 680 (9th Cir.1984); G. Gilmore & C. Black, The Law of Admiralty, Sec. 9-18 at 615 (2d ed. 1975) ("Gilmore & Black").
 
 
 9
 The district court dismissed appellants' in rem claim against the Fjord, finding that no credible evidence adequately supported plaintiffs' allegations. In order to conclude that the Fjord was not liable in rem, the district court must have found either that the skiff is not part of the Fjord's equipage or that Russell McLinn was not in lawful possession, or both. Thus, we may affirm the district court's conclusion of no in rem liability if either possible implicit finding is not clearly erroneous.
 
 
 10
 Because appellants must show both that the skiff is part of the equipage of the F/V Fjord and that Russell McLinn was in lawful possession of the skiff to establish in rem liability, we need not reach the equipage question in order to affirm the district court's ruling that there is no in rem liability.[3] We affirm the district court solely on the basis that the evidence in the record supports an implicit finding that Russell McLinn was not in lawful possession of the Fjord's skiff. See Beezley v. Fremont Indemnity Co., 804 F.2d 530, 530 n. 1 (9th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1610, 94 L.Ed.2d 796 (1987) ("we may affirm the district court on any basis fairly supported by the record").
 
 
 11
 Under the doctrine of in rem liability, charterers, pilots and stevedores are considered to be in lawful possession, whereas pirates, mutineers and "like" people are not. Gilmore & Black, Sec. 9-10 at 601. As discussed by Gilmore & Black, the Barnstable rule of lawful possession should be viewed as creating liability where the owner of the vessel has entrusted control to a third party. Gilmore & Black, Sec. 9-18 at 621; see Complaint of McLinn, 744 F.2d at 685 (implying that vessel owner's consent to the use of the vessel's skiff in activities not involving the employee's duties is relevant to a finding of lawful possession); Cavcar Co. v. M/Z Suzdal, 723 F.2d 1096, 1101 (3d Cir.1983). Thus, the rule requires that the vessel's owner give some degree of consent or authorization to the third party.
 
 
 12
 Despite Russell McLinn's status as a member of the Fjord's crew, the record supports the district court's implicit finding that he was not in lawful possession of the skiff. His use of the skiff was much more like that of a mutineer, pirate, or thief than a charterer, pilot, or stevedore. It is clear from the record that Russell did not have any authority from his father, William, to use the skiff. Use of the skiff was highly regulated and Russell required his father's permission to use the skiff. No one other than William McLinn possessed the authority to allow Russell to use the skiff.
 
 
 13
 When leaving the Fjord for his flight to Seward, both William McLinn and Joe Borg, the skiffman on the Fjord, told Russell to stay out of the skiff and not to touch the skiff. William admonished his son that he saw no reason for Russell to use the skiff while he was gone. In addition, Russell's personal, recreational use of the skiff at night while under the influence of alcohol and probably marijuana, contrary to all expectations for the skiff's use, supports the district court's implicit conclusion that Russell was not in lawful possession of the skiff.
 
 
 14
 Although the district court did not make an express finding on the issue of lawful possession in rejecting appellants' in rem claim, the evidence in the record supports an implicit finding that Russell was not in lawful possession of the skiff.[4] Therefore, the Fjord is not liable in rem for Russell McLinn's negligence in operating the skiff.
 
 IV
 
 15
 The district court's dismissal of appellants' claim under Alaska Statutes Sec. 05.25.040 is reviewed de novo. In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). The court below dismissed the claim on the basis of federal preemption. Section 05.25.040 provides:
 
 
 16
 the owner of a watercraft is liable for injury or damage caused by the negligent operation of his watercraft.... The owner is not liable, however, unless his watercraft is used with his express or implied consent. It is presumed that his watercraft is being operated with the knowledge and consent of the owner, if at the time of the injury or damage, it is under the control of his ... son.
 
 
 17
 "Watercraft" is defined by AS Sec. 05.25.100(4) to mean "every description of vessel ... used or capable of being used as a means of transportation on water and devoted to recreational pursuits."
 
 
 18
 The statute applies to all state waters, AS Sec. 05.25.100(5), and therefore embraces navigable waters which are subject to federal maritime statutory and common law. The district court held that AS Sec. 05.25.040 directly conflicts with an act of Congress, the Limitation of Liability Act, 46 U.S.C.App. Sec. 183. In addition, the district court found that AS Sec. 05.25.040 interferes with the goal of uniformity of admiralty law. On those grounds, the court held that AS Sec. 05.25.040 was completely preempted.
 
 
 19
 AS Sec. 05.25.040 could impose unlimited personal liability on William McLinn beyond the liability permitted under 46 U.S.C.App. Sec. 183. Section 183(a) limits the liability of the owner of any vessel to the amount of the interest of the owner in such vessel. In light of this court's holding in Complaint of McLinn, 744 F.2d at 683, it is apparent that each statute would apply to the Fjord and its skiff. It is settled doctrine that a state law that conflicts with established maritime law or federal statute will not be given effect. Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 160-61, 40 S.Ct. 438, 440-41, 64 L.Ed. 834 (1920); G. Gilmore & C. Black, Sec. 1-17 at 48.
 
 
 20
 We have previously held that the federal remedial scheme for wrongful death within state territorial waters preempts state law remedies. See Nygaard v. Peter Pan Seafoods, Inc., 701 F.2d 77, 80 (9th Cir.1983); Nelson v. United States, 639 F.2d 469, 473 (9th Cir.1980). Inasmuch as AS Sec. 05.25.040 conflicts with 46 U.S.C.App. Sec. 183 in the instant case, the federal law must prevail.
 
 
 21
 Moreover, we find that AS Sec. 05.25.040 is completely preempted by federal law. There is a strong need for uniformity in federal maritime law, see Southern Pacific Co. v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917); Complaint of McLinn, 744 F.2d at 682; and AS Sec. 05.25.040 is destructive of this uniformity. Maritime law, through long experience, has been concerned with the limitation of liability. Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 270, 93 S.Ct. 493, 505, 34 L.Ed.2d 454 (1972). AS Sec. 05.25.040 would impose different liabilities depending on the type of vessel, its particular use at the time of the negligent act giving rise to liability under section 05.25.040, and its location.
 
 
 22
 The Supreme Court in Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), stated that "the smooth flow of maritime commerce is promoted when all vessel operators are subject to the same duties and liabilities." Id. at 676, 102 S.Ct. at 2659. The Court in Foremost found untenable a similar system of liability which AS Sec. 05.25.040 creates, a local rule of liability in excess of that permitted by federal maritime law. Id.
 
 
 23
 AS Sec. 05.25.040 simply imposes a greater sanction upon commercial vessel owners than federal law allows. For that reason, we affirm the district court's ruling that federal law completely preempts AS Sec. 05.25.040. See Nygaard v. Peter Pan Seafoods, Inc., 701 F.2d at 80; Nelson v. United States, 639 F.2d at 473; cf. Southern Pacific Co. v. Jensen, 244 U.S. at 218, 37 S.Ct. at 529-30 (state law remedial scheme of insurance payments by vessel owners to state fund conflicts with Congressional policy of limiting liability of owners); Paladini v. Fink, 26 F.2d 21 (9th Cir.1928), aff'd, 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed.2d 613 (1929) (provision of California Constitution permitting liability of stockholders beyond that allowed by 46 U.S.C.App. Sec. 183 is preempted).
 
 V
 
 24
 It was undisputed in the court below that the McLinn skiff did not have proper operating lights, in violation of, inter alia, 46 C.F.R. Sec. 25.05-1 (1982). This violation establishes statutory fault on the part of the skiff, and serves as a basis for in rem liability of the F/V Fjord. See Complaint of McLinn, 744 F.2d at 680. Once statutory fault is established, the rule of The Pennsylvania, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1873), places the burden of exoneration on appellees to show "not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." Id. (19 Wall) at 136.
 
 
 25
 The district court held as a matter of law that the lack of lights was not a cause of the accident. This court reviews a finding of proximate cause, or lack thereof, for clear error. Armstrong v. United States, 756 F.2d 1407, 1409 (9th Cir.1985); see Trinidad Corp. v. S.S. Keiyoh Maru, 845 F.2d 818, 827 (9th Cir.1988) ("We review the district court's application of facts to The Pennsylvania rule under the clearly erroneous standard."). Testimony at trial was that the natural lighting was "dusklike," although the qualities inherent in this term were disputed by the parties. Although the McLinn skiff was leaving an area of greater darkness relative to the illumination surrounding the Panamarioff skiff, Chichenoff testified the McLinn skiff was "pretty clear" to him approximately thirty seconds prior to the collision. Haakanson, a passenger in the Chichenoff skiff, discussed with Chichenoff the approaching McLinn skiff thirty to forty seconds prior to the collision.
 
 
 26
 Although the district judge termed Russell McLinn's testimony incredible in many major areas, Russell testified he saw the Chichenoff skiff approximately a minute before impact. Panamarioff, who was intoxicated, was distracted by his balky outboard motor. Witnesses testified Panamarioff was looking back at his engine just before the collision. Russell McLinn also testified to this. Panamarioff himself admitted that he looked up immediately prior to the collision to see the oncoming McLinn skiff. Although the facts are disputed with respect to whether Panamarioff was viewing forward so that lights could have warned him of the closing McLinn skiff, the district court did not clearly err in refusing to so find.
 
 
 27
 In construing the rule of The Pennsylvania, this court has held that the vessel statutorily at fault has the burden of establishing the violation "could not reasonably be held to have been a proximate cause of the collision." Pacific Tow Boat Co. v. States Marine Corp., 276 F.2d 745, 749 (9th Cir.1960). More recently, we held that "the burden imposed under The Pennsylvania rule is discharged by a clear and convincing showing of no proximate cause, rather than the stricter test of beyond a reasonable doubt." Trinidad Corp., 845 F.2d at 825.[5] Applying this standard, the evidence supports the district court's finding that the absence of lights was not a proximate cause of the accident.[6]
 
 VI
 
 28
 Although the district court did not expressly address the question whether Russell McLinn was required to blast a sound signal, the fact findings of the court below dispose of the issue.
 
 
 29
 Appellants assert that the collision actually took place within the channel between Near Island and Kodiak Island and that the vision between the approaching vessels was obscured by an intervening obstruction, a large bluff at the entrance to the Near Island channel. Because of the obstruction, appellants argue, a sound signal was required by law. 72 COLREGS (International Regulations for Preventing Collisions at Sea) 9(a), (f), or 34(e).
 
 
 30
 There is ample evidence in the record to support not only the district court's finding that the collision took place outside the channel entrance, but also that the advancing skiffs were visually aware of each other. Therefore, no intervening obstruction obscured the skiffs from their operators' field of vision and no sound signal was required.
 
 VII
 
 31
 The district court held that William McLinn was not liable to plaintiffs under the doctrine of negligent entrustment. The doctrine of negligent entrustment is embodied in Restatement (Second) of Torts Sec. 390 (1965), and both parties agree that Sec. 390 should apply to suits in admiralty. See PanAlaska Fisheries, Inc. v. Marine Construction & Design, 565 F.2d 1129, 1133-34 (9th Cir.1977). Section 390 provides that one who supplies a chattel for another's use whom the supplier "knows or has reason to know" is likely to use the chattel in a manner "involving unreasonable risk of physical harm to himself and others" is subject to liability for the physical harm resulting to them. Restatement (Second) of Torts Sec. 390. To prevail on this theory, appellants must show that William McLinn supplied the skiff directly to his son, and must have known or should have known that Russell would be likely to use the skiff in a dangerous manner. This court reviews for clear error whether a duty of care has been breached. Eichelberger v. NLRB, 765 F.2d 851, 856 (9th Cir.1985); Armstrong, 756 F.2d at 1409.
 
 
 32
 First, there is ample evidence to support the conclusion that William McLinn did not "supply" the skiff to his son for his use. As noted above, Russell McLinn did not have permission to use the skiff, and, according to his father, Russell did not use the skiff in the past without his father's permission. Second, there is enough evidence in the record for the district court to find that William McLinn did not know or have reason to know that his son would operate the skiff in a harmful manner. Russell McLinn had not previously disobeyed his father on any serious matter or given his father any reason to believe he would disobey instructions not to use the skiff. Further, William McLinn had observed his son using the skiff and believed he was a competent operator. Prior to the collision, William McLinn had never seen his son drunk or under the influence of alcohol or marijuana, although the evidence at trial on this point was conflicting. In addition, William McLinn testified he was unaware of Russell's legal problems with marijuana, driving while intoxicated charges, or juvenile problems in Hawaii. The district court did not clearly err.
 
 VIII
 
 33
 The district court found no creditable evidence adequately supported appellants' allegations that William McLinn was liable under the doctrine of family purpose. The evidence supports the district court's conclusion that liability could not be predicated on the family purpose doctrine. Although, as appellants assert, the bases of the court's finding may be ambiguous, there is evidence indicating that the F/V Fjord was not simply a family activity, but was part of a commercial enterprise. Further, as the facts described above show, Russell McLinn's use of the skiff on June 30, 1979 is not consistent with any conceivable family purpose.
 
 IX
 
 34
 Appellants assert that the district court erred in sustaining objections to appellants' attempts to introduce evidence concerning Russell McLinn's reputation for delinquency. Appellants argue such evidence is relevant to the issue whether William McLinn knew or should have known his son would use the skiff in a dangerous manner. Therefore, appellants contend that the district court's rejection of the negligent entrustment claim must be reversed as a result of the error. This court reviews evidentiary rulings for an abuse of discretion. Coursen v. A.H. Robins Co., Inc., 764 F.2d 1329, 1333 (9th Cir.1985).
 
 
 35
 We hold that the district court did not abuse its discretion in excluding the evidence. It was clearly in the district court's discretion to decide whether the evidence appellants sought to admit was relevant under Federal Rule of Evidence 401, or outweighed by its potential prejudice and its potential for wasting the court's time. Fed.R.Evid. 403. See id. at 1333-35, 1339-40. Further, appellants did not suffer any prejudice as a result of the alleged error. Appellants questioned William McLinn extensively about his son's behavior, and similar evidence to that excluded was admitted.
 
 X
 
 36
 Appellants contend that the district court erred in refusing to award punitive damages against Russell McLinn. Punitive damages are available under the general maritime law and may be imposed for "conduct which manifests 'reckless or callous disregard' for the rights of others or for conduct which shows 'gross negligence or actual malice or criminal indifference.' " Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc., 767 F.2d 1379, 1385 (9th Cir.1985) (citations omitted).
 
 
 37
 The district court found that, although Russell McLinn did not exercise reasonable care, there was no creditable evidence that he acted wilfully, recklessly, maliciously, or with gross negligence. This finding is reviewable for clear error. Bergen v. F/V St. Patrick, 816 F.2d 1345, 1347 (9th Cir.1987). Upon a careful review of the record, we hold that the district court did not clearly err. The district court could properly find that, notwithstanding Russell's intoxication, he did not act with a "reckless or callous disregard for the rights of others" or with "gross negligence or actual malice or criminal indifference." Protectus Alpha Navigation Co., 767 F.2d at 1385.
 
 XI
 
 38
 The district court erred with respect to its comparative fault allocations. The court below incorrectly compared each plaintiff's comparative negligence with the other. The district court held that the percentage of comparative negligence "of each of the two plaintiffs and each of the three defendants is apportioned as follows: Patrick Churchill--20%; Dale Carlough--20%; Russell McLinn--35%; David Panamarioff--25%; William McLinn and the F/V Fjord--0%." The district court, however, should have compared each plaintiff's negligence separately with the defendants. We reverse and remand on this issue for proceedings consistent with this opinion.
 
 
 39
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED. Each party shall bear its own costs on appeal.
 
 
 
 *
 Judge Hug was drawn to replace Judge Anderson, who died while this appeal was pending. Judge Hug has read the briefs, reviewed the record and listened to the tape of oral argument
 
 
 [1]
 We do not decide whether appellants were denied their right to a jury trial because we hold that federal law preempts appellants' pendent state law claim brought under Alaska Statutes Sec. 05.25.040
 
 
 [2]
 Plaintiff's suit against defendant-appellee David Panamarioff was settled while this appeal was pending
 
 
 [3]
 The district court did not specifically decide whether the McLinn skiff was part of the equipage of the F/V Fjord, although it did hold that the Chichenoff skiff was part of the equipage of the F/V Supersonic. Although there is no indication in the record that the district court did not consider the McLinn skiff to be part of the equipage of the Fjord, the parties are in dispute on this issue and we need not resolve it
 
 
 [4]
 After the district court entered its findings of fact and conclusions of law, appellants twice moved the court to amend its findings and judgment on the issue of lawful possession. The district court again was presented with both the appellants' and the appellees' evidence on the issue. Appellees' evidence at trial consisted primarily of the testimony of William McLinn and Joe Borg, but also included testimony by Russell McLinn
 By refusing to amend its findings, it is clear that the district court again rejected appellants' claim that Russell was in lawful possession of the skiff. Consequently, we conclude that the district court necessarily accorded greater weight to appellees' evidence. We will not second-guess that assessment of credibility. United States v. Gomez, 846 F.2d 557, 560-61 (9th Cir.1988) ("We cannot second-guess trial court findings that depend on explicit or implicit credibility assessments unless the findings are unsupported by the record.").
 
 
 [5]
 We note that our decision in Trinidad Corp. reexamined States S.S. Co. v. Permanente S.S. Corp., 231 F.2d 82 (9th Cir.1956). In Permanente S.S. Corp., we held that the rule of The Pennsylvania requires the vessel statutorily at fault to "prove beyond reasonable doubt that the collision would [nonetheless] have occurred." Id. at 87 (emphasis added) (quoting Oriental Trading & Transp. Co. v. Gulf Oil Corp., 173 F.2d 108, 109 (2d Cir.), cert. denied, 337 U.S. 919, 69 S.Ct. 1162, 93 L.Ed. 1729 (1949)). We are bound by our decision in Trinidad Corp., which reexamined our earlier decisions in light of subsequent Supreme Court precedent. 845 F.2d at 825 n. 5. See, e.g., Heath v. Cleary, 708 F.2d 1376, 1378 n. 2 (9th Cir.1983) ("Where ... a Supreme Court decision has effectively undermined prior Ninth Circuit precedent, a [three-judge panel is] free to reexamine those earlier cases to determine their continuing validity.")
 
 
 [6]
 We note that this court in a prior appeal also agreed with the district court on this issue with respect to Chichenoff's negligence. Complaint of McLinn, 744 F.2d at 684 n. 3