12 F.3d 1107
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LECLERCQ MARINE CONSTRUCTION INCORPORATED; Samuel Leclercq;
Royal Insurance Co.; Highlands Insurance;
Albany Insurance Co., Plaintiffs-Appellees,
v.
LECO, INC., in its own name and doing business as Leco
Marine and Pioneer Lumber and Treating, Defendant-Appellant,
and
William E. Legg, Defendant.
LECLERCQ MARINE CONSTRUCTION INCORPORATED; Samuel Leclercq;
Royal Insurance Co.; Highlands Insurance;
Albany Insurance Co., Plaintiffs-Appellants,
v.
LECO, INC., in its own name and doing business as Leco
Marine and Pioneer Lumber and Treating,
Defendant-Appellee.
MONTICELLO INSURANCE COMPANY; Unigard Insurance Company, Plaintiffs,
v.
LECO, INC., in its own name and doing business as Leco
Marine and Pioneer Lumber and Treating, et al.,
Defendants.
William SLEEPER; Fred Dust; June Dust; Peter Orton,
Plaintiffs-Intervenors-Appellees,
v.
LECO, INC., Defendant-Intervenor-Appellant.
MONTICELLO INSURANCE COMPANY; Unigard Insurance Company, Plaintiffs,
and
Commercial Union Insurance Company, Plaintiff-Intervenor-Appellee,
v.
LECO, INC., in its own name and doing business as Leco
Marine and Pioneer Lumber and Treating, et al., Defendants,
and
Leco, Inc., Defendant-Intervenor-Appellant.
Leclercq Marine Construction Incorporated; Samuel Leclercq;
Royal Insurance Co.; Highlands Insurance;
Albany Insurance Co., Plaintiffs.
ALLSTATE INSURANCE COMPANY, Plaintiff-Intervenor-Appellant,
v.
LECO, INC., in its own name and doing business as Leco
Marine and Pioneer Lumber and Treating,
Defendant-Appellee.
LECLERCQ MARINE CONSTRUCTION INCORPORATED; Samuel Leclercq;
Royal Insurance Co.; Highlands Insurance;
Albany Insurance Co., Plaintiffs-Appellees,
v.
LECO, INC., in its own name and doing business as Leco
Marine and Pioneer Lumber and Treating, Defendant-Appellant,
v.
John E. BATES; Lisa McKenney; Aaron Anderson,
Plaintiffs-Intervenors-Appellees.
 Nos. 92-35500, 92-35540, 92-35541, 92-35514, 92-36615, 92-36578.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1993.
Decided Nov. 29, 1993.
 
 Before: GOODWIN, HUG and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Leco, Inc., a marina owner, appeals from a district court order holding it liable for the spread of a marina fire. We AFFIRM on all issues except Allstate's cross-appeal.
 
 
 3
 On December 20, 1990, a fire started on or near a boat owned by Joseph and Eda Johnson ("the Johnsons") which was moored at Leco, Inc. ("Leco")'s marina. Mr. Johnson, who lived on his boat, rescued his children, but the fire quickly spread to adjacent docks and boats moored in the area, as well as to property owned by plaintiff LeClercq Marine Construction, Inc. ("LeClercq"). The fire ultimately damaged or destroyed six buildings, one houseboat, several piers and thirty-five boats.
 
 
 4
 LeClercq filed an action against Leco and Leco's president, William E. Legg ("Legg"), in the United States District Court for the Western District of Washington, alleging maritime jurisdiction. Other plaintiffs, including owners of boats destroyed in Leco's marina and their insurers, intervened.
 
 
 5
 Plaintiffs settled with Legg early in the trial, signing a settlement agreement which specifically released Legg and his business, Pioneer Lumber, without releasing Leco. Leco's counsel was involved in the negotiations and did not object to the settlement. After the court approved the agreement, Leco moved for summary judgment on all claims, arguing that under Washington State law, a plaintiff who releases a solvent agent necessarily releases a principal as well. The district court denied Leco's motion with regard to compensatory damages, but dismissed plaintiffs' claims for punitive damages.
 
 
 6
 The trial of plaintiffs' remaining claims was bifurcated on the issues of liability and damages. After a seven day bench trial on liability, the court found that the fire started inside the Johnsons' boat, but that Leco was responsible for its spread. Because of freezing temperatures, Leco had turned off all water to the marina and failed to provide any other fire fighting equipment. The court found that the fire could have been contained had proper fire fighting equipment been available and that Leco had a duty to provide some type of fire fighting equipment, given the number of live-aboard tenants residing at the marina. It held that Leco was liable for damages to property outside the immediate vicinity of the Johnson's boat, since this property would have been saved by proper fire fighting equipment.
 
 
 7
 After trial, the parties stipulated to damages, reserving the right to appeal liability. Final judgments were entered on May 18, 1992, May 21, 1992 and July 13, 1992.
 
 I. MARITIME JURISDICTION
 
 8
 Leco first contends that the district court erred in taking jurisdiction under the federal maritime jurisdiction statute, 28 U.S.C. Sec. 1333(1). We review de novo, Reebock Int'l, Ltd. v. Marnatech Enterprises, Inc., 970 F.2d 552, 554 (9th Cir.1992), and affirm. The district court properly took jurisdiction under Sisson v. Ruby, 497 U.S. 358 (1990). Accord, Unigard Security Ins. v. Lakewood Eng'g & Mf'g, 982 F.2d 363 (9th Cir.1992).
 
 II. SETTLEMENT AGREEMENT
 
 9
 Leco next contends that the district court erred in denying its motion for summary judgment based on the release of Legg. We review de novo, Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992), viewing the evidence in the light most favorable to the non-moving party, Fed. Deposit Ins. Corp. v. O'Melveny & Meyers, 969 F.2d 969, 744, 747 (9th Cir.1992), and affirm.
 
 
 10
 Under both Washington state law and federal maritime law, an agreement to release one tortfeasor does not release another joint tortfeasor, absent a specific agreement to the contrary. Avery v. United States, 829 F.2d 817, 819-20 (9th Cir.1987); Vanderpool v. Grange Ins. Ass'n, 756 P.2d 111, 113-14 (Wash.1988) (en banc); see also Restatement 2d of Torts Sec. 885(1) (1979); Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971). In the present case, the parties clearly intended to release Legg and Pioneer without releasing Leco. Both the settlement agreement and the court order adopting it specifically state that the plaintiffs did not intend to release Leco.
 
 
 11
 However, Leco correctly notes that Washington state courts have held that, under some circumstances, a tort plaintiff who releases an agent also releases a vicariously liable principle. Glover for Cobb v. Tacoma General Hosp., 658 P.2d 1230 (Wash.1983) (en banc). Since federal maritime courts have not addressed this issue, Leco argues that these cases are controlling.
 
 
 12
 This argument fails for several reasons. First, under Washington law, the settlement with Legg would, at most, extinguish Leco's liability for claims based on Legg 's negligence. It would not eliminate liability for claims based on Leco's own negligence or the negligence of other Leco employees. Schoening v. Grays Harbor Hosp., 698 P.2d 593 (Wash.Ct.App.1985). Leco has several other employees and could be vicariously liable for their actions as well as for Legg's.
 
 
 13
 Second, the Washington State rule is part of a specific statutory scheme which abolishes the common law right of indemnity between passive and active tortfeasors. Vanderpool, 756 P.2d at 113 (citing RCW 4.22.040(3)); Glover, 658 P.2d at 1237 (citing the Restatement 2d of Judgments Sec. 51, Comment f (1982). Washington courts have specifically limited the Glover rule to situations where treating the agent and principal separately would prejudice the principal. Thus, a Washington plaintiff who settles with an agent may still sue a principal if a court determines that the settlement was reasonable and the plaintiff was unable to recover completely from the agent. Pickett v. Stephens-Nelsen, Inc., 717 P.2d 277, 280 (Wash.Ct.App.1986). Similarly, settling with a principal does not prevent a plaintiff from suing an agent since the policy considerations underlying the Glover rule do not apply. Vanderpool, 756 P.2d at 113.
 
 
 14
 Under federal maritime law, the right of indemnity still exists. Newby v. F/V KIRSTEN GAIL, 937 F.2d 1439, 1443-44 (9th Cir.1991). Thus, the policy considerations underlying the Washington rule are inapplicable. Plaintiffs could not extinguish Leco's right to collect from its agents merely by settling with them. Thus, under the logic of Washington's decisions, the settlement with Legg does not release Leco.
 
 III. LECO'S DUTY TO PROVIDE FIRE EQUIPMENT
 
 15
 Leco also argues that the district court erred in finding a duty to provide alternative fire fighting equipment during freezing weather. We disagree.
 
 
 16
 Leco correctly notes that liability cannot exist without a duty and that, although negligence and causation determinations are reviewed for clear error, the existence of a duty is a question of law, reviewed de novo. Vollendorff v. United States, 951 F.2d 215, 217 (9th Cir.1991); Hasbro Indus. v. M/S CONSTANTINE, 705 F.2d 339 (1983), cert. denied 464 U.S. 1013 (1983). Since federal maritime law is sketchy as to the liability for fire spread, we look to Washington case law and general common law principals. Daigle v. Point Landing, Inc., 616 F.2d 825 (5th Cir.1980).
 
 
 17
 Contrary to Leco's assertions, this case law indicates that, at least under certain circumstances, landowners have a duty to control the spread of a fire on their land, even if they were not negligent in starting the fire. Early common law Washington cases recognize that landowners have a duty to control fires once they became aware of them. Jordon v. Spokane, 186 P. 875, 876 (Wash.1920); Sandberg v. Cavanaugh, 164 P. 200 (Wash.1917). More recent decisions based on statutory liability also recognize a common law duty to take reasonable precautions against fire. Oberg v. Dep't of Natural Resources, 787 P.2d 918, 921 (Wash.1990); Arhnold v. United States, 166 F.Supp. 373 (W.D.Wash.1958). A landowner has a duty not to create conditions that pose an unreasonable risk of fire. Dealers Serv. and Supply Co. v. St. Louis Nat. Stockyards, 508 N.E.2d 1241, 1244 (Ill.App.1987); Coe v. United States, 502 F.Supp. 881, 885 (D.Ore.1980); B.W. King v. West New York, 230 A.2d 133, 138 (N.J.1967).
 
 
 18
 The scope of this duty varies with the particular circumstances and the risk of fire. Centraal Stikstof Verkoopkantoor v. Pensacola Port Auth., 205 F.Supp. 724, 727 (N.D.Fla.1962).[1] In the present case, Leco was renting residential space to multiple families; it knew these live-aboard tenants used wood burning stoves and that boat fuel is extremely combustible. Moreover, Leco stored large quantities of inflammable materials related to boats on the marina.[2] This situation poses an obvious danger to human life and property and the same policy considerations which justify requiring apartment building owners to install fire alarms, smoke detectors and fire extinguishers justify imposing a duty on Leco.[3]
 
 
 19
 Leco argues that a comprehensive statutory scheme regulates marinas and requires certain precautions, which, under their statutory reading, do not include those suggested by the district court. It claims that tenants could not use the fire fighting equipment envisioned by the court, and that it would be dangerous to encourage them to do so. Finally, they note that other marinas in the area also shut off the water during freezing weather and do not supply alternative fire fighting equipment.
 
 
 20
 Balancing these arguments, we agree with the district court that a duty should be imposed. As the plaintiffs point out, Leco's evidence about the custom of other marinas is relevant but not determinative. TJ HOOPER, 60 F.2d 737 (2d Cir.1932). Moreover, plaintiffs' witnesses testified that alternative fire fighting equipment can be provided and at least one private marina does so.[4] Finally, under one plausible reading of the relevant statutes, Leco had a statutory as well as common law duty to provide alternative fire fighting equipment.[5]
 
 
 21
 Given the policy considerations and the obvious danger to human life posed by fire in a marina where families live on their boats, we affirm the district court's finding of a duty.
 
 IV. LECO'S DUTY TO LECLERCQ
 
 22
 Leco's claim that the district court erred in finding a duty to the owner of the neighboring property is without merit. The case law cited in the previous section does not distinguish between a landowner's duty to neighboring landowners and her duties to tenants.[6] Leco had a duty to provide alternative fire fighting equipment to its tenants and breached this duty, thus, it is liable both to the tenants whose loses were caused by its breach and to the owner of the adjoining property, LeClercq.
 
 V. PROXIMATE CAUSATION
 
 23
 Leco also argues that the court erred in finding that Leco's failure to provide alternative fire fighting equipment was the proximate cause of the fire's spread. Pointing out that none of the live aboard tenants actually tried to put out the fire and that Mr. Johnson "crawled past several of his own fire extinguishers" when he rescued his son, Leco urges that none of the tenants would have made use of alternative fire fighting equipment had it been available.
 
 
 24
 Proximate causation is a factual question reviewed under a clearly erroneous standard. Vollendorff v. United States, 951 F.2d 215, 217 (9th Cir.1991). Applying this standard, we do not find that the court's conclusion was clearly erroneous.
 
 
 25
 Mr. Johnson obviously would not have run for the fire hoses instead of his child, but the court did not find that fire fighting equipment would have saved Mr. Johnson's boat; thus, Leco's statements about Mr. Johnson are irrelevant. The record supports the district court's conclusion that other tenants might have tried to douse the flames had equipment been available. After family members were safe, several tenants attempted to untie their boats. These tenants might well have used fire fighting equipment had it been available. Mr. Meyers testified that he considered trying to douse the flames, but remembered that the water was turned off. Several tenants testified that "in their opinion the fire most definitely could have been controlled had there been proper fire fighting equipment or even a garden hose available." In light of this evidence, the court's finding that Leco's failure to provide alternative fire fighting equipment caused the fire to spread is not clearly erroneous.
 
 VI. PUNITIVE DAMAGES
 
 26
 On cross-appeal, plaintiffs contend that the district court erred in granting summary judgment on the issue of punitive damages. Although a grant of summary judgment is ordinarily reviewed de novo, Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992), a trial court's decision to award punitive damages is reviewed for abuse of discretion. Bouman v. Block, 940 F.2d 1211, 1234 (9th Cir.) cert. denied 112 S.Ct. 640 (1991).
 
 
 27
 Federal maritime law allows punitive damage awards on a "showing of conduct which manifests 'reckless or callous disregard' for the rights of others.... or gross negligence or actual malice or criminal indifference." Churchill v. The F/V FJORD, 892 F.2d 763, 772 (9th Cir.1988); Evich v. Morris, 819 F.2d 256, 258-59 (9th Cir.1987); Proctectus Alpha Navigation Co. v. N. Pac. Grain Grower, 767 F.2d 1379 (9th Cir.1985). The district court found that plaintiff's "allegations, viewed in a light most favorable to plaintiffs, do not show "reckless or callous disregard for plaintiffs' rights," nor "actual malice or criminal indifference."
 
 
 28
 Plaintiffs do not seriously contend that the district court failed to understand the law regarding punitive damages. Rather their main argument is that the court should have decided the punitive damage issue after plaintiffs' case rather than granting summary judgment. If so, the error is harmless. There is no right to punitive damages and all of plaintiffs' cases involve more egregious conduct than Leco's. Since plaintiffs have not shown that the district court abused its discretion in declining to award punitive damages, we affirm.
 
 VII. THE PENNSYLVANIA RULE
 
 29
 Plaintiffs also contend that the district court erred in failing to apply The Pennsylvania rule, which was adopted by the Supreme Court to encourage ships to comply with safety rules. The Pennsylvania, 86 U.S. 1256 (1873). Under this rule, once a plaintiff shows a defendant violated safety codes, the burden shifts to the defendant to prove by clear and convincing evidence that the safety violations did not cause plaintiff's injuries. Churchill v. F/V FJORD, 892 F.2d 763, 772 (9th Cir.1988). Plaintiffs argue the court should have applied this rule both in determining the cause of the fire and in determining the cause of its the spread.
 
 
 30
 If the court made any such error, it is harmless. Any error in allocating the burden of proof for the cause of the fire's spread is obviously harmless, since the court held Leco liable for the fire's spread. Moreover, with regard to the fire's start, the court found that "it is overwhelmingly clear that the fire did not originate in the electrical outlets," but on the Johnsons' boat. Given this finding, the Pennsylvania rule is irrelevant. Even if the court had applied the Rule, it would not have found Leco's code violations caused the fire.
 
 VII. ALLSTATE'S CROSS-APPEAL
 
 31
 Finally, Allstate argues that the district court erred in reducing its recovery from Leco by the amount received from Pioneer. We agree.
 
 
 32
 After the liability trial, Allstate and Leco negotiated damages and ultimately agreed to a settlement of $119,000. A letter from Leco's counsel to Allstate indicates that at the time of these negotiations, counsel was aware that Allstate had settled with Pioneer. On May 5, 1992, Leco's attorney wrote and signed a stipulated agreement that Allstate was entitled to recover $119,000.
 
 
 33
 After sending this document to Allstate's attorney, Leco's attorney "learned" that Allstate had settled with Pioneer Lumber for $7,000. (Affidavit of Michael C. Hayden). He then contacted Allstate's attorneys and stated that Leco was entitled to reduce the $119,000 figure by the $7,000 Allstate had received from Pioneer. Id. Allstate's attorneys would not agree to reduce the settlement.[7]
 
 
 34
 Allstate moved the court for an order enforcing the stipulated order. Leco opposed this motion, arguing that the Uniform Contribution Among Joint Tortfeasor's Act, RCA Sec. 4.22.060(2) entitled it to an offset for amounts already paid by Pioneer. The district court agreed and entered a $12,000 judgment in Allstate's favor on July 13, 1992.
 
 
 35
 This decision was incorrect. Leco and the district court cite case law and statutes entitling a codefendant to offset its liability against any amounts plaintiffs have received from codefendants. Leco's Reply Brief & District Court Order (citing RCA Sec. 4.22.060(2), Scott v. Cascade Structures, 673 P.2d 179 (1983) (involving a jury award)). However, Allstate correctly argues that this case law applies to contested judgments, where the failure to award such an offset would enable a plaintiff to receive a double recovery. Interpreting a similar Alaska contribution statute, the Alaska Supreme Court found that the statute did not apply to stipulated settlements where the settling parties were both aware of the earlier judgment. Continental Ins. Co. v. Bayless & Roberts, Inc., 608 P.2d 281 (Ala.1980). Rather, courts should assume that the negotiating parties have already taken the previous settlement into account. Id. Since their ultimate figure represents a compromise, "[n]either the law ... nor common sense requires that one settlement be reduced by the amount of a prior settlement." Id. at 296.
 
 
 36
 Leco was aware Allstate had received a settlement from Pioneer long before it entered into settlement negotiations with Allstate. A letter from Leco's counsel at the beginning of these negotiations indicates that he was aware of the settlement. Leco's counsel was present in court when the court approved this settlement as reasonable and received a copy of the settlement agreement and order approving it. Leco does not argue that Allstate deliberately concealed the Pioneer settlement during settlement negotiations and, at most, Leco's counsel was unaware of the precise amount of Allstate's recovery.
 
 
 37
 Thus, contract law applies. Leco's signed stipulation agreement constitutes an offer, which Leco's counsel then attempted to revoke. Whether he could still revoke at this time depends on whether Allstate had accepted the offer before counsel's phone call. Leco's counsel contends that he contacted Allstate's lawyers before they signed the agreement but presents no evidence supporting this contention. The trial court did not make findings on this issue. Thus, we REVERSE and REMAND to allow the court to determine whether a contract existed. If the stipulated order was enforceable, Allstate is entitled to $119,000. If not, Allstate is entitled to litigate damages or re-enter into settlement negotiations with Leco.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 See also Almacenes Miramar, 649 F.2d 21 (1st Cir.1981) (no liability for failing to provide a guard or fire extinguishers to a warehouse because an ordinary person would not have known that pharmaceuticals were highly combustible); Coe, 502 F.Supp. at 885 (uncut grass not flammable enough to create a duty to provide fire equipment on premises)
 
 
 [2]
 See Dealers Serv., 508 N.E.2d 1241 (landowner may be liable to adjoining property owner where he gave explicit permission for a local business to dump combustible material, was aware that others were dumping trash and refuse, yet failed to cut back flammable weeds); B.W. King, 230 A.2d 133 (pier owner liable if "a reasonably prudent man would have employed some method of 'housekeeping' to remove or eliminate any such [coal dust] and any other flammable material" from his pier)
 
 
 [3]
 In addition, at the time the marina was built, Leco explicitly promised the Seattle Fire Department that it would install fire hoses and dry chemical portable fire extinguishers as well as sprinkler systems. In exchange for this promise, the Department allowed Leco to place Pier B and C fifteen feet apart, a deviation from the Building Code Requirement that there be a 16-foot space between buildings to prevent fire spread. The district court found that Leco "totally disregarded" its promise to provide a fire hose and "indeed denied that [the promise] even existed, a position the Court finds not credible." Leco never installed the sprinkler system and allowed the hoses to rot. No fire hose was present on the pier near the Johnsons' boat on the night of the fire. See, e.g., Fireman's Fund Am. Ins. Co. v. Almacenes Miramar, 649 F.2d 21 (1st Cir.1981) (landowner may be liable if she undertakes to provide fire protection and carries out this obligation negligently)
 
 
 [4]
 Leco's arguments that this evidence should have been excluded are without merit. The practices of one marina are relevant to show it was feasible to provide alternative fire fighting equipment
 
 
 [5]
 The Uniform Fire Code requires compliance with NFPA 303 Standards for Marinas and Boatyards. The 1986 version of NFPA Sec. 5-2.4 specifically requires that marina owners provide alternative fire fighting equipment during freezing conditions; however the 1990 version, which became effective several months before the fire, eliminates this language. However, plaintiffs have a colorable argument that the 1986 version in fact applies because the UFC incorporated the 1986 version, and was not amended to incorporate the 1990 version. If the 1986 version applies, Leco's liability is clear. See Oberg, 787 P.2d at 921 (landowner who fails to comply with forest fire prevention statute can be held liable for forest fire); Proctectus Alpha, 767 F.2d 1379 (marina owner liable where his agent violated a Washington statute prohibiting obstruction of fire fighters); Herberg v. Swartz, 578 P.2d 17 (Wash.1978) (hotel owner liable where arson fire spread because of hotel's fire code violations)
 
 
 [6]
 See, e.g., Dealers Serv., 508 N.E.3d at 1244 ("a landowner's possession and control of land gives a landowner a power of control ... which he must exercise for the protection of those outside the premises"); Herberg, 578 P.2d at 21-22 ("trial court also correctly adopted the standards of RCW 70.62 as the duty owed by appellant [landowner] to respondent [neighbor]. That the legislature intended the same protective policy to extend to landowners in the immediate vicinity of the danger is based on the Act, the regulatory standards, and on common sense."); Oberg, 787 P.2d at 921 ("a land occupier has an affirmative obligation to use care to confine any fire on his premises, regardless of its origin, in favor of all persons off his premises who are subjected thereby to an unreasonable risk of damage due to escape of the fire"); Jordon, 186 P. at 876 ("there is a measure of responsibility on the part of an owner [of land] ... which requires him to use reasonable effort to prevent the spread of a fire occurring upon his premises, apart from his own act or neglect attending to the starting of the fire, which may render him liable to his neighbor as for negligence") (cites and internal quotations omitted)
 
 
 [7]
 Leco's attorney alleges that Allstate signed the stipulated agreement after receiving Leco's call about the Pioneer settlement. Id. at 36. No proof of this allegation has been submitted, however